Good afternoon, Your Honors. Martha Curtis is one of the counsel for the appellants. We are here on a Deja Vu All Over Again case. This is a motion for summary judgment that was originally granted by Judge Guidry for the insurer on the application of flood deductible. This court on September 24, 2021 reversed Judge Guidry and found that the language in the insurance policy was ambiguous. The language at issue is 5% of total insured ED value quote at risk end quote at time of the loss as respects floods. So the issue is when it says 5% of total insured, which this court emphasized in its original opinion that it was insured ED, not insurable, what that means, especially when you have at the end as respects for flood. The insured, the people claiming under the policy, said that a reasonable interpretation of that is that what's at risk is what the insurer is at risk to pay them. The insurer is at risk of $10 million for flood, because that's the aggregate limit for the year for flood. So 5% of what's at risk as insured would be 5% of $10 million or $500,000. It's not 5% of insurable risk, which this court pointed out in its original opinion. This court has JUSTICE KENNEDY Almost arguing that this is not ambiguous. I'm overstating it. You haven't said that, but you are focusing so much on the language, Judge Smith, in that original opinion three years ago. Almost exactly three years ago. We take a while sometimes. So this whole thing was ambiguous. May have had one way to read it, another way to read it that may have seemed more logical to that panel. But nonetheless, it was sent back to Judge Guidry to do exactly what he did, and he did take extrinsic evidence. And so I think that's the new piece that we have to be looking at, as you understand better than I do. JUSTICE GINSBURG Yes, Your Honor. It was remanded to him, and his duty was to find, and this court did not tell him how to find it. It did not say do it on a summary judgment, cross motions for summary judgment. He could have, and we said he should have, given all the factual determinations we believe he made in his opinion, he should have sent it to the fact finder. He should have sent it to the jury. They should have looked at the extrinsic evidence that he indicated, ensured, allegedly. They should have looked at all these issues that are issues of fact. It's supposed to be the mutual intent of the party. That may not be able to be resolved by extrinsic evidence. This may be one of those times where it's just not able to be resolved. We have two pieces of evidence that are in the record at record three and four that say it's $500,000, in writing, before the policy is issued. In fact, we have two pieces of evidence that say that, black and white on a piece of paper. It wasn't sent to the defendant, Your Honor, so that's what I'm saying. Okay, they can say, well, that wasn't my mutual intent, but then they want to say, well, this circular from Chubb that isn't even an insured or a circular from IMR that isn't even involved in this case, that shows my intent. Well, that wasn't sent to us, right? So this is I think this is really a situation where I would say it's a push. No one can say the mutual intent of the parties. It can't be not, you know, well, I didn't see that. Well, I didn't see yours. And again, Your Honor, I believe you're right that that's an issue, but that's an issue of fact for the jury, whether that's sufficient or not. And if it isn't — I understand that the back and forth of this expert or that one maybe isn't what we should look at, but what about the binder, which was sent to you also? Okay. The binder said the exact same thing that the policy said, Your Honor, and that goes back to this court's opinion to begin with. The binder says V-A-R-T-O-L, which is the same thing, valued at risk of a time of loss. So we just go back to the same issue. If the policy language is ambiguous, the binder language is ambiguous. So it still goes back to the same issue, and the judge said, well, he should have read the policy, the McDonald should have read the policy. Well, this court has already said if you read the policy, it's So again, I really think this is a weird case where it's a push. We say this language, and they say, well, I didn't see your mutual intent. That certainly was our singular intent. We had two pieces of docked pieces of paper from, you know, that said this is how it's going to be. For a builder's risk policy, and if you look at tab four, it says a builder's risk policy of $76 million, your flood limit deductible is $500,000. Clearly says that. The number three, same thing. At that point, it was $55 million, but it was aware it was a builder's risk policy, aware at the high levels of the overall project, but clearly said it was $500,000. So that's our intent. They say, well, I have all this over here. This was my intent. Okay. We disagree. We did not have, then it seems to be, we did not have mutual intent. So what do you do when extrinsic evidence can't resolve it? You could go to the presumption. I understand all the arguments about the presumption, but I'm going to even leap over that. Let's say we don't go to the presumption. Okay. It's another push, right? Just because we don't get in a presumption doesn't mean they win. If it's a push, then it's a push again. Then what's the next tiebreaker? I'm pulling back to our football. What's our third tiebreaker? I grew up in the wrong place, I guess. What do you mean by a push? Oh, I'm just saying it's an equal. Give me a synonym. I'm just saying the evidence on extrinsic goes both ways. The evidence on presumption. Let's say we don't get the presumption. I say we should. Let's say we don't go presumption. Okay. Now it's still ambiguous, right? So then what do we do? Well, who has the burden of proof? Right? Because if it's equal, whoever had the burden of proof lost. Who has the burden of proof to prove a limitation in an insurance policy under Louisiana law, whether it's an exclusion, whether it's a condition, whether it's a limitation due to a deductible that means you get zero. Anytime there is something in an insurance policy that is not the initial there's coverage. No one disputes that there wasn't coverage for flood, that flood was not a covered peril. The dispute is whether you get paid for it, whether it's within the deductible or not. So what I'm saying is there's no clear evidence to support the insurer's interpretation, and I think there is on our side, but let's say there's not. If you keep going on and on and it keeps being equal, equal, equal, equal, well, who has the burden of proof? The insurer has the burden of proof to prove the limitation. That's the end of that's that's just would be the end of it. And I know you talked about McDonnell 1, the first opinion that you know, we go back go back to what Judge Guidry says now, but if you're calling McDonnell 1, it also says, well, the insurer's argument about equity seems seems palatable. Equity is one of the one of the things you look at on on resolving an issue. You you and I get it's a de novo motion for summary judgment. It's de novo. It should be that the facts are not weighed. When you read Judge Guidry's opinion, it certainly seems to be reading it objectively. He is weighing factual evidence, and he is making credibility calls. He calls, he says, well, your evidence, that doesn't seem reliable. I think there's a whole bunch of errors in it, and you can't rely on one piece of it. That certainly seems like weighing in evidence. Credibility, reliability, those are juror terms. Those are not motion for summary judgment terms as a matter of law. It's a factual insinuation of what, in his opinion, he says, I think the factual, I think the root of this whole problem was this summary written by this person. That's a factual determination. Judge Guidry is saying, I think the problem is this fact of this guy who did that. That's not a summary judgment determination. It isn't. As we know, all factual inferences should be resolved in our favor, and in this case, it would have to be the only way is if, under the Jefferson block, he could not usurp the jury unless the evidence is so one-sided that no reasonable person could decide. Could the district court that? Your Honor, the district court wrote the summary judgment opinion, and he says there's no genuine issues of material fact. We don't know when he writes the opinion that he's going to make factual determinations in his opinion. I can't argue that, Judge, just remember, don't make any factual determinations in your opinion before you write it. I don't know what he's going to write until he writes it. He writes the opinion, and he says, I don't think this is credible. I don't think this is reliable. This is what I factually found the root cause of everything is. There's no way to, you know, the law is the law. Summary judgment law is the law. He says it in his own opinion. In the beginning, he says, I should, you know, do the facts in all the inferences in favor of the non-mover, the boilerplate, everything summary judgment you say. He writes those words, but when you read the opinion, he doesn't apply it. And there's no, I mean, there's no way to say, you always need to remind the judge that he's not supposed to make factual determinations and weigh evidence in summary judgment. Okay, but that's a little different from saying he should have sent it to the jury. You're just saying he shouldn't have granted a summary judgment based on finding facts. Yes, he should not have granted their summary judgment based on disputed facts. Correct. And you can have cross motions for summary judgment where one side does not have disputed facts and one does. What was our remand for? Because we said, you know, figure this out. Your remand said, and do it, we're not telling you how to do it. That's the last sentence in your opinion. It said, we are not making any, we set no limits on what proceedings the district court should conduct on remand. You're not telling them to do it on cross summary judgment motions. You're not telling them, I don't know, get a special master, send it to the jury. You're not telling them anything. You're just saying, we think it's ambiguous. What do we do? What do we do if it's ambiguous? And your first thing is, well, there are things we can look at, like equity. And in your own opinion, you say it doesn't seem equitable. That seems to go for me. You know, they say you can look at extrinsic evidence. We put in extrinsic evidence that no one disputes. Everyone wants to guess, well, this is what that matter, this one. No one disputes that two pieces of paper directed to us say that this is, it's a $500,000 flood deductible. Then, you know, this was within the insurers. This is the whole thing in Louisiana. It's a $500,000 flood deductible. They could have written the policy to say total insurable values instead of total insured values. They could have defined total insured values. They could have done all of that. Excuse me, Counselor. There's a sign in Appleby's brief and probably in yours, too, but I was looking at the Appleby's, some rules of interpretation, including statutory in Louisiana, and usage in specific ways, such as this particular insurance contract is part of it. It seems to me that what Judge Guidry is trying to get to the bottom of is what does this term mean when it appears in an insurance policy, not what your broker sent you or anything else. What does this really mean? You started your argument by talking about maybe a meeting of the minds, and you never understood this to be, your client never understood what this meant to be. I don't think that's what we're looking at. We're trying to look at what does this policy language mean in this policy under the general understanding in Louisiana, usage of those phrases, and that's what Judge Guidry answered. Well, Your Honor, if he did that, that was incorrect on your remand to him, because you've already said we don't know what this policy means. You've already said it was ambiguous. So you can't remand it to him and then him say now I'm going to interpret it as a matter of law, which is basically what he did. He came back and interpreted it as a matter of law again. Extrinsic evidence can prove there's no dispute, genuine dispute of material fact, is all that means. So when we sent it back, we didn't say you have to send this to the jury. I'm just repeating what my colleagues have said. It said look at extrinsic evidence, and without needing to say it, the rules of procedure will apply to what you get, and if there's no genuine dispute of material fact after you see whatever is presented to you, then resolve it, whatever the appropriate way to resolve it is. But there is general issues of material fact, and even in his own opinion, one of the things he cites from the broker, from the binder, it still uses the word insurable. It doesn't use the word insured. It uses the word insurable. That's in his opinion, in that cut and paste he puts in from the binder. And again, Your Honor, if the Fifth Circuit said the first time in this situation when you have a sublimit for flood and you say 50 percent of total risk for flood and that another reasonable interpretation could be 5 percent of total insured, that both of those are reasonable, then they can't then go back to the district court and he says no, as a matter of law, one's better than another, which is basically I agree with you what he did, because the alleged extrinsic evidence he used was basically the binder, which says the same thing that the policy says, except it also says insurable rather than insured, which again is another ambiguity because the policy doesn't say insurable. The policy says insured, E.D., not A.B.L.E. He discounts, again, you remand it for evaluation of extrinsic evidence. I don't see why the district court has the ability to throw out all of our extrinsic evidence and say it's not reliable and credible. That's weighing the evidence and evaluating the evidence. What evidence did he throw out? He threw out our two pieces of paper that said— Excuse me, counsel. You have the information from your own broker. You have what you just talked about, potential difference between insurable and insured, and I don't know what you introduced to show what that difference might be. What other evidence are you talking about that Judge Guidry ignored that shows there was a dispute? He ignored our two pieces of evidence that said the deductible was $500,000 for flood. He said that— Okay. I'm not understanding. That wording is throughout here. What particular piece of evidence are you talking about? It's December 10, 2014, letter to McDonald. It will have a deductible of $500,000, record on appeal 28567, record except for three— Who is that between? That is by the broker to McDonald, and then February 11, 2015, to my client, Young. The flood deductible quote will be $500,000, record on appeal 28569, record except for— Again, it's your broker telling your client what the— Telling the owner, yes. So he told McDonald directly on December 10, 2014, then told the owner on February 11, 2015, which is very telling because the policy incepts at the end of February 2015. And if you look at the letter, it says this is the insurance you're going to get for this thing. Now, I understand they said, well, I didn't see it. I didn't see it. Well, we didn't see everything that they say that— And theirs is all post— This is all pre-issuance of the policy. The policy comes in February 2015. They have no extrinsic evidence that predates issuance of the policy. They only have post-policy extrinsic evidence, and they have nothing that says we saw what they want to say before the policy was issued. Remember, we're trying to get the mutual intent of the parties, not just the insurer's intent, and again, not just our intent. And that's why I said it may be pushers in the right word. Then I said, well, okay, it's equal. You thought it was this. They thought it was that. That was the same ambiguity we started to begin with. Okay, what do we go to next? Presumption. You don't want to like presumption because they were sophisticated. I disagree for all the reasons. We say we didn't write that particular provision. They wrote it. The Louisiana Civil Code says, doesn't say, except if you're McDonald's, it doesn't apply. I think the presumption's good, but even if— So you say, okay, you don't get the presumption. Then what's the next way? How do you resolve it if it's equal? How do you resolve it? Who has the burden of proof? The insurer has the burden of proof on limitation. I'm sorry, Your Honors, I'm out of time. We're two seconds over. No apology. Good afternoon. My name is Leigh Ann Thigpen. I'm here on behalf of defendant insurers or the insurance company. So a lot to respond to there. I want to just try to frame us up of where we are. As you all know, we were here. Fifth Circuit found that this particular deductible provision was ambiguous. We've talked about the order that was sent back, that sent this case back down to Judge Guidry with instructions. And what was said to Judge Guidry was, we're going to go to the district court to determine whether extrinsic evidence resolves the ambiguity. And the ambiguity being, what does 5% values at risk at the time of loss, minimum $500,000 mean? Okay. So we get back down to the district court. We have discussions amongst counsel of how are we going to deal with this? What are we going to do? And the decision was made that we would file summary judgment motions with respect to this extrinsic evidence issue, because we were already up on a summary judgment before. The deductible provision had been the subject of summary judgment when insurers won and it was appealed last time. So the decision was made amongst counsel. We would file competing summary judgment motions. And that's what happened. Insurers filed a summary judgment motion, and the appellants filed summary judgment motions, representing to the court that there were no genuine issues of material fact, and submitting their extrinsic evidence on what does 5% of the values at risk at the time of loss mean in the industry. Explain to me is very much a side point, probably in your view, total 5% of the total insured value, total 5% of the total insurable value. Yeah. I would say that is a red herring, Your Honor. So the phrase at issue, and it's important that this is a builder's risk policy and not a straight property policy. And the reason for that is that the value at risk at the time of loss is not static. It is dynamic. It changes over time. So it's important to know where you are over time. What is the value at risk at that time? It's not the sublimit that's the value, because that's a static value. It is the value of the risk that the insurers are insuring. That is the value at risk at the time of loss that has to be valued for the application of the percentage in order to calculate the deductible. And so that is the term of art that—I'm just talking about the point that was being made by opposing counsel, the actual policy language says insured. So I'm just talking about the difference between those two. I'm not familiar with exactly what she's talking about there. Then move on. That's why I was asking you to—Yes, sir. I believe that it is a red herring. The issue is what is the meaning of that term of art? Can extrinsic evidence resolve the ambiguity that the court found with respect to that term of art? Well, the plaintiff to some extent is arguing that what we—what the district judge should have done on remand, though I don't know if Judge Smith's opinion at all put it this way, is turn it out what did the parties agree to? What was their meeting of the minds? And I don't think there was any effort by Judge Guidry to determine that. Instead, he was determining what does this language mean once I have this extrinsic evidence? I'll see what insurance environment makes of this, as you just explained, and all that was explained to him with whatever evidence that you had, and he made a determination not based on what they understood, what meeting of the minds was, but what does this language mean? Not that it's nonambiguous on the face, but once you see this extrinsic evidence, you know what it means. Is that the proper way to do it, or should it have been more of an effort to determine what did each party understand at the time this policy was issued? Well, I think what Judge Guidry did was he took the direction of the court, and the court said, we think this is ambiguous. Can we resolve this? Can it be resolved with extrinsic evidence? And so he took that on board. Each side submitted their extrinsic evidence, and after a careful review of the extrinsic evidence found that the ambiguity could be resolved. So you're saying that our direction was simply, if you can, determine through extrinsic evidence what this contract language means in the abstract. Not as to what Jung, or whatever the name of the hotel is, understood it to mean, but just what does this policy language mean, independent of anybody was thinking at the time? I don't, I mean, it's not explicit that way, Your Honor, but I do think that it was specific to this dispute, and that is. We weren't writing a thesis or a treatise. Correct. Well, you used the word abstract, and so I was just trying to make sure that it wasn't. I used the word abstract, but you're not looking at what the parties understood. This evidence was not about what the hotel understood, or what the broker understood. It's that what does the insurance industry think this language means? Well, I actually think it's both, Your Honor. I think it, what is the customer and industry, you know, understanding, but then also there was extrinsic evidence, and Judge Guidry goes through this in detail in his opinion, that what did go to what the parties understood, and specifically what their broker understood at the time. Oh, but that evidence ended up being irrelevant. No, sir. Because there was. Because you did not buy into what the broker was indicating the policy meant. There were. Let me finish my question before you tell me. So now you can go ahead and tell me what all that was about. Okay. So the extrinsic evidence that Counsel Opposite was talking about is not what I'm talking about. She's talking about two pieces of evidence. One is an email, and another is a draft letter that was never authenticated. Not, everybody agrees we never saw it. We're not even sure it was ever issued. No testimony was taken on it. It's just randomly in a file. And, you know, it's not even signed. The letter's not even signed. What I'm talking about, though, is that when this issue came up, the flood happened in August of 2017. The adjuster, the independent adjuster that was assigned to the loss by the insurers said, hey, this is the way this deductible is applied, and told them in round numbers that it was going to be a pretty high number, like over $3 million. They went and talked to their broker. The broker, their internal emails with their broker, McDonald's broker, that they probably thought we would never see, that says the way that this is to be interpreted is the way insurers said, which is you look at the value of the risk at the time of the loss, and you calculate it based on that. I just want to make a couple points regarding standard, Your Honor. The first is that, and we cite this in our brief, whenever there is a determination about extrinsic evidence, the standard to be employed is clearly erroneous or clear error. And furthermore, when you're looking at what a district court ruled upon, the evidence that it considered in deciding a motion for summary judgment, that that is an abuse of discretion standard. Again, this is cited in our brief. But the point being that Judge Guidry's analysis with respect to this extrinsic evidence is to be given much deference with the clearly erroneous standard and then what he looked at and chose to consider with respect to the granting of the summary judgment motion. On this question of the usurpation of the jury question, again, we deal with that in our brief, Your Honor. First of all, they never raised that at the district court level. So we cite this authority in our brief. They've waived it. You can't now, once you lose, come to the Fifth Circuit and say, oh, well, he's usurped the jury because he didn't define the way we wanted to. They waived that. They didn't raise it at the time. Again, Judge Guidry was following an explicit instruction from this court in conducting the analysis that he conducted. Finally, the cases that the counsel opposite has cited are applying New York law. However, even under New York law, there is still an allowance for the consideration of extrinsic evidence. So it is not a usurpation of the jury for Judge Guidry to follow this court's instruction and to weigh the evidence that is put in front of him. One of the other things we directed, the last section of the opinion, the district court should also determine whether the presumption in favor of coverage of, in this case, of the defendant is not a presumption. The judge also said, and I know generally what your answer to that is, so I'm not trying to cut you off from giving it. Did the judge say anything at all about that in his order? He did. He did. He dropped a footnote and said, we don't have to get to the presumption issue. He did address it, though. That's right. And what he said is, we don't have to get there because the extrinsic evidence has resolved the ambiguity. And you don't go to the presumption question if you have resolved the ambiguity. And the case law is 100% clear on that. We have cited the case law. I just want to be sure it was in his opinion and not just in your brief. No. Yes, sir. It is absolutely in his opinion. And what he finds, and like I said, this is 100% consistent with the case law, which is that if the extrinsic evidence resolves the ambiguity, that's step one. And he found that it did, so you don't have to get to the presumption question. But he does deal with it. Only if the extrinsic evidence does not resolve the ambiguity, then you go to the presumption, and then there's the question of the sophisticated insured and whether that comes into play. And he does deal with that a little bit in that footnote, but essentially says, we don't even have to get there because the extrinsic evidence resolves the ambiguity, and it's clear. I would like to go back, Your Honors, unless there's a question about the extrinsic evidence that was submitted, just to be 100% clear in response to counsel opposite's argument and assertion that it's a push or it's even. It's not even. It's not even close. If you read Judge Guidry's opinion, if you take a look at the evidence that we submit, it's like a landslide versus a little swath of pebbles. The two pieces of paper that they submit are this one email, again, that we were not copied on, and this draft letter, again, that we were not copied on, that we're not even sure was issued, an unsigned letter. Everything else is evidence that insurers have submitted, and it is internal emails of their agent, their broker, admitting that the way insurers say it should be interpreted is correct and that that's the way it's supposed to be. This Chubb article she's talking about, their public adjuster, their claims advocate is the one who was sending that to Alan McDonald. They never thought we'd see that, but 100% support insurers' position in this case that the way that the deductible is to be interpreted is consistent with what we said, so there's a mountain and a molehill, so it's not a push. That's really all I've got. I'm happy to answer any questions. I just think it's important to note the standards that we're talking about, which is, one, is that in an extrinsic evidence analysis, the standard is clear error, and then further, in the analysis of what evidence a district court considers in a summary judgment motion, that the standard is abusive discretion. What's your best site to the highest landslide that you think you all have? I would say my best site is the internal emails about what this really means, and I can pull the record site or send it to the court. I don't have it here right in front of me. It's certainly in our papers, and I can get that to you. You might be able to get it to you when we're sitting here. The internal emails that you all presented of your opponents. That were produced in discovery, that their agents are talking about. Correct. I would say that's the best, but it really is all of it. I mean, I don't think you have to take it in totality. We submitted deposition testimony as well, multiple depositions. I mean, there's a lot. And this argument of that it must temporally be at the same time that the policy was being issued is also a red herring. As one of you pointed out, when my opponent was up here, our counsel opposite was up here, it's broader than that. You can look at custom and usage. There's a lot more that can be considered than just an email that was sent around the time that the policy was being procured. All right, counsel. I think we have your argument. Thank you. Yes, Your Honor. When you all remanded it the first time, you cited Louisiana Supreme Court Durr case, which says, where there is an ambiguity in the policy, however, quote, the court may look to extrinsic evidence to determine the party's intent. That's what extrinsic evidence is for. It's to determine the party's intent. It's not to reexamine, let me see if I can determine that this isn't ambiguous anymore because it's extrinsic evidence. It's to determine the party's intent. There is no extrinsic evidence that determines an equal intent of these parties. Clearly, our party has written documents that they say supports their reasonable proposition. They have their written documents that support the other way. Right. So if they have, you know, again, Your Honor, we're supposed to have mutual intent, right? So if we think this, based on our documents, and No, they're saying your internal Oh, no, what, they're, it's not, it's not McDonald or, it's no appellants. They are citing to broker internal emails that happened after the dispute arose. And again, Broker? Broker. The broker. The broker that sent you the emails that said It's, it's one of the, it's the same company and it may be the same guy. And again, that again shows just the whole ambiguity of this whole thing. And on the insurable, what I was telling you, Your Honor, about insurable versus insured, on page eight of Judge Guidry's opinion, he cites total insurable values, $80 million. Where is he quoting that from? He is quoting it from the binder. He cut and pasted the binder. This is when they said the binder is great. Look at the binder. One of the things I was going over with your opponent is what would be the difference between insurable and insured in this case? And did you present any evidence that would show that even matters here? It does seem to me that when you're talking about an increasing value of the coverage as the building, the hotel continues to be built, what's insurable arguably is going up and what's insured is also going up. So I'm not sure there's any difference. I'm sorry, Your Honor. I have to, it's not going up for the flood. That's the difference. Well, I don't know, but you said how much is deductible is going up, but what is insurable is also going up. No, not for the flood because the flood sublimits always $10 million. And that's actually Are you raising this now for the first time or did you put anything in evidence that there's some sort of difference between insurable and insured? Is any of that in the record of what difference that might make? We base that difference on this Court's original opinion that that's why it's ambiguous. And there is a difference between insured and insurable because actually as the project went up, the $10 million flood limit stayed the same. So we actually lost, you only insured for this much. The full thing could have been insurable, but they wouldn't allow it. They wouldn't give it. We were not insurable for the full thing. So when you have a percentage deductible for the full insurable, but you only have a $10 million sublimit, and that's talked about in the original opinion, that's unequitable, that you cannot have the percentage What do you do, okay, so I'm looking at that page 8. What do you do about the fact that flood is written the same as named windstorm and says that VARTOL minimum? Yes, because it means value at risk at time of loss. So the value at risk, why would they have to have two separate lines? Why don't they just say all of it is VARTOL? Why wouldn't respect flood is what the policy says. This binder leaves off as respect flood. I mean, it has flood as a signed thing. But if it was exactly the same, why would they even have two lines to begin with between windstorm and flood? That would make it clearer if they only had one line. All right, Council. Thank you. You've argued with passion. We'll see how this all comes out. We appreciate the assistance of each of you. We are in recess until tomorrow morning at nine o'clock.